KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* BURTON.

Opinion delivered February 7, 1916.

1. TRIAL—REMARKS OF COUNSEL—REMOVAL OF PREJUDICE.—In a personal injury action defendant sought to introduce in evidence, photographs of plaintiff at work some months after the alleged injury. In objecting to the introduction of the testimony counsel for plaintiff said that "it was a put up job." *Held*, the action of the trial court, in admonishing the jury not to consider these remarks, removed any prejudice which might have arisen.

2. APPEAL AND ERROR—INVITED ERROR.—Error can not be predicated upon the trial court's doing something agreed to by appellant's counsel.

3. MASTER AND SERVANT—DUTY OF SERVANT TO ACT QUICKLY—NEGLIGENCE A QUESTION FOR THE JURY.—Where the plaintiff was working on a motor car, hauling a push cart, loaded with ties, and where he was directed by the foreman to release the connection between the two cars, and he acted in obedience to a direct command from his foreman, and was required to act promptly, the service demanding his exclusive attention, he having no time for observation and deliberation, *held*, when the plaintiff was injured, the question of defendant's negligence, or plaintiff's contributory negligence, is properly a question for the jury.

4. DAMAGES—PERSONAL INJURIES—AMOUNT.—Plaintiff was injured by falling from a motor car hauling a push car along defendant's tracks. *Held*, under the evidence, that a verdict of $1,500 was not excessive.

Appeal from Miller Circuit Court; *George R. Haynie, Judge*; affirmed.

STATEMENT BY THE COURT.

William A. Burton sued the Kansas City Southern Railway Company to recover damages for personal injuries alleged to have been sustained by him while in the employment of the company by reason of its negligence. The material facts are as follows:

In January, 1915, William A. Burton was employed as a section hand by the defendant railway company. He was injured while assisting in hauling ties on a push car with a motor car pulling it, the accident happening near Ravenna, in Miller County, Arkansas. The push car was loaded with about thirty ties. They were seasoned, were eight feet long and seven inches thick. The plaintiff, Elmer Sherman and W. M. Whitworth, the section foreman, were going out to unload ties at the time plaintiff was injured. Elmer Sherman was riding on the rear end of the push car and it was his duty to hold the ties on the push car. Whitworth was operating the motor car. Burton was sitting on the back end of the motor car about two feet from his foreman and was acting as brakeman.

The plaintiff himself testified substantially as follows: The push car was attached to a motor car in front of it and we were going north at the time I received my injuries. The foreman told me to disconnect the push car, which was connected by a chain to the motor car. The foreman had shut off his battery before I began to pull out the pin. When I reached over to pull out the pin the section foreman shoved his battery on. This caused the car to jump or jerk violently and I was thrown down between the push car and the motor car. I threw my hand against the ties in order to keep from getting down across the rails. I fell down between the tracks and the car of ties passed over my body and shoved me along for ten or fifteen feet right down the track. The car ran completely over me.

The plaintiff then detailed the character and extent of his injuries which will be stated later on in discussing the question of the alleged excessiveness of the verdict.

S. G. Hearn, a cousin of the plaintiff, testified: I saw the accident at the time the plaintiff was hurt and was about seventy yards away; Sherman was on the rear end of the push car with his back to the motor car; Whitworth was driving the engine to the motor car and was about two feet from Burton; the exhaust to the motor car stopped and in just a little bit started up again; then

I saw Burton lying on the track; the push car had passed over his body.

For the defendant W. M. Whitworth testified as follows: Burton was on the motor car with me, braking, at the time he was injured. Elmer Sherman was riding on the rear end of the push car and was holding the ties on it. When we got down to a point somewhere between sixty and one hundred yards of the place where I wanted to stop I shut the batteries off. Burton pulled the spike out of the chain that coupled the cars together. He then stood up with his feet towards the push car. He gave the push car a shove and this gave the motor car a start. He then jumped off the car in the opposite direction to which it was going and this caused him to fall down. The power was not on the motor car at the time he fell. It had been cut off and the car was just running along easy. I did not start up the motor car suddenly and did not turn on the power just before Burton got off. I had instructed Burton to stay on the car until we got to where we were going to unload ties. There was no jerk whatever to the car at the time plaintiff was injured.

Elmer Sherman testified: Whitworth told Burton when they got down there close to the station to pull the pin out. The foreman shut off the power so the chain would give slack and thus enable Burton to pull out the pin and uncouple the push car from the motor car. Burton uncoupled the push car and then got up and stood with his back the way the motor car was going. At the time he stepped off, the push car was a rail or more from the motor car. A rail is forty or fifty feet long. There was no power in the motor car when Burton stepped off of it. There was no jerking or jolting of it. I was looking right at him when he stepped off and could see him until the push car ran over him. I am a son-in-law of Whitworth.

Other evidence will be stated or referred to in the opinion. The jury returned a verdict for Burton in the sum of $1,500 and the defendant railroad company has appealed.

*Read & McDonough,* for appellant.

1. The verdict is excessive. 82 Ark. 61; 87 *Id.* 109; 89 *Id.* 9; 98 *Id.* 425.

2. The remarks of counsel were improper and prejudicial. 82 Ark. 562; 65 *Id.* 619; 75 *Id.* 577.

3. The court erred in admitting in evidence the written statement of plaintiff. Self-serving declarations, even though in writing can not be admitted. 92 Ark. 472; 168 S. W. 514.

4. A verdict should have been directed for defendant. There must be substantial evidence authorizing a recovery. 118 Ark. 349. Unless the section foreman knew plaintiff was in a place of danger at the time that the power was turned on, plaintiff can not recover. 113 Ark. 60; 112 *Id.* 446; 111 *Id.* 272, 486; 107 *Id.* 341; 78 *Id.* 505; 79 *Id.* 437. There must be knowledge of the dangerous position before the master is liable. 84 Ark. 377; 95 *Id.* 477.

5. The court erred in giving instruction No. 1 for plaintiff. 90 Ark. 439; 78 *Id.* 553; 82 *Id.* 562. Also in giving No. 2 and refusing No. 6 for defendant. 100 Ark. 467 and cases *supra* under subdivision 4.

*William H. Arnold,* for appellee.

1. The verdict is not excessive. Plaintiffs' injuries were permanent and he was subjected to much suffering mentally and physically. The testimony sustaining the plaintiffs recovery must be taken in its strongest and most favorable light. 86 Ark. 244; 91 *Id.* 337; 90 *Id.* 210; 93 *Id.* 191; 96 *Id.* 394; 97 *Id.* 486; 87 *Id.* 109; 97 *Id.* 438; 98 *Id.* 211; 90 *Id.* 233; 89 *Id.* 424.

2. The instructions as to mental suffering were proper. 95 Ark. 220; 96 *Id.* 32.

3. The photographs taken by plaintiff were admissible; those taken by defendant were not and the remarks of counsel were not improper. 102 Ark. 400; 100 *Id.* 437; 74 *Id.* 256. Juries are influenced by frivolous remarks. 109 Ark. 231; 103 *Id.* 307. But if improper it was invited error. 113 Ark. 82.

4. The Act of March 8, 1907, makes all corporations liable for injuries to servants resulting from carelessness, omission of duty or negligence regardless of the grade of service.  87 Ark. 587; 89 *Id.* 522; 92 *Id.* 502; 102 *Id.* 562.  Evidence tending to prove that defendant's servant was guilty of negligence which caused plaintiff's injury was sufficient to sustain a charge of negligence.  102 Ark. 625; 109 *Id.* 393.

5. There is no error in the court's charge.  It is not error to refuse instructions covered by others.  110 Ark. 209; 111 *Id.* 272; 111 *Id.* 538.  Burton was not guilty of contributory negligence in obeying the foreman.  82 *Id.* 19; 79 *Id.* 53; 92 *Id.* 554.

Hart, J., (after stating the facts).  (1)  Counsel for the defendant assigns as error the action of the court with relation to certain remarks of counsel for plaintiff.  It appears that a short time before the trial the attorney for the plaintiff went to the scene of the accident and took certain photographs showing the motor car and the push car on the tracks as they were at the time of the accident.  The plaintiff was injured on January 14, 1915.  During the first part of June he was engaged in sawing down trees for a lumber company.  An agent of the defendant made arrangements with the foreman of that company to cause plaintiff to go to work on a very large tree and to allow him to take photographs of the plaintiff while so engaged without the plaintiff being aware of his doing so.  The photographs taken by defendant were introduced in evidence and the plaintiff's counsel proved by Burton that they were taken without his consent or knowledge of what they were to be used for. He testified that the foreman told him to get this big tree out of the way.  Counsel for the defendant objected to this testimony.  Counsel for the plaintiff stated that he wanted to show that it was a "put-up job."  Counsel for the defendant objected to the remarks of counsel for the plaintiff and asked for a continuance of the cause. Counsel for the plaintiff explained what he meant by the remark, that is, that the defendant had taken snap shots of the plaintiff while at work in helping to cut down a

big tree without the knowledge or consent of the plaintiff and that these photographs were taken for the purpose of being used at the trial of the case. The court declined to grant a continuance but stated to the jury that he withdrew from their consideration the remarks of counsel for the plaintiff to the effect that it was a "put-up job," referring to the photographs. The court then permitted plaintiff to state that these photographs were taken without any knowledge or consent on his part that they were to be used in the trial of the present case. It is not contended that the photographs as taken by the defendant do not correctly represent the plaintiff as he was engaged in helping to cut down the tree and on this account it is contended that the remarks of counsel were prejudicial to the rights of the defendant. If it be conceded that the words "put-up job" as used by counsel for the plaintiff have a meaning of wrongful action on the part of the defendant and thus were calculated to create prejudice against the defendant in the minds of the jury, still the action of the court in excluding these remarks from the jury had the effect to remove this prejudice. The court told the jury not to consider these remarks and only permitted the plaintiff to testify that the photographs were taken without his knowledge or consent that they were to be used in the trial of the instant case.

(2) Counsel for the defendant also assign as error the action of the court in admitting in evidence a written statement of the plaintiff. After the plaintiff was injured he was carried to a hospital operated for the benefit of the employees of the defendant and was attended by Doctor Boyd. Doctor Boyd was a witness in the case and first testified that the plaintiff stated to him that he was pulled off the motor car by the chain which coupled the push car to it. He testified that the plaintiff had stated to him in substance that the chain dragged him off of the motor car. The doctor took a written statement of the plaintiff, made to him at the time he was brought to the hospital. The physician asked the plaintiff the following:

"State in your own way and for your own benefit just how this happened," and the plaintiff answered, "I was on the motor car with push car attached to motor car with chain and W. M. Whitworth told me to uncouple the push car from the motor car which I did, when Whitworth speeded up the motor car and jerked me off the car."

This written statement of plaintiff was desired to be put in evidence by his counsel. Counsel for the defendant objected to this unless the statement of Doctor Boyd which was attached to it was also read to the jury. Among other things, the doctor's statement contained the following: "Burton said when he got the push car loose Whitworth turned on speed and the chain dragged him off the motor car and ran over him."

After some controversy between counsel, the court admitted the written statement of the plaintiff and also the statement of Doctor Boyd just referred to. We think an examination of Doctor Boyd's testimony as a whole shows that the only statement ever made to him was the written one signed by the plaintiff, referred to above. And we think that when the whole record is considered, counsel for the defendant agreed that the written statement of the plaintiff might be read to the jury if at the same time the statement of Doctor Boyd was also read in connection with it. This the court required to be done. Therefore, no error could be predicated upon the court doing something agreed to by counsel for the defendant.

(3) It is next insisted that a verdict should have been directed for the defendant. According to the testimony of the defendant, the foreman did not direct plaintiff to pull the pin for the purpose of uncoupling the cars at the time he was injured and did not know that plaintiff was doing so. The foreman testified to such a state of facts and also said that he did not put on the power just before the plaintiff was injured. The foreman also stated that he had directed the plaintiff to stay on the motor car until they got to a place where they wanted to unload the ties but that the plaintiff had got off before that, contrary to his directions. Of course if this testimony was

true there was no liability on the part of the defendant; and if it had been undisputed the court should have directed a verdict for the defendant. But the testimony of the foreman is not even fully corroborated by Elmer Sherman, his son-in-law. He corroborated Whitworth to the extent that there was no jolting or jerking of the motor car and also said that the plaintiff stepped off of the motor car himself with his back to the way the motor car was running, and fell on his back. On the other hand, however, he testified that the foreman told Burton when they got near the place where they intended to unload the ties, to pull the pin out when he stopped the engine and for the plaintiff to get off and help him, Sherman, stop the push car.

In this last respect the testimony of Sherman is at variance with that of Whitworth. Whitworth's whole testimony is flatly contradicted by that of the plaintiff himself. According to the testimony of the plaintiff he stood within two feet of Whitworth and Whitworth, after shutting off the power, directed him to pull the pin before the cars had stopped; that, in compliance with the foreman's directions, he did so; that the foreman then, without any warning to him, suddenly turned on the power on the motor car causing it to start suddenly with a violent jerk; and that this caused him to be thrown backward and to fall between the cars.

According to this testimony, Whitworth, knowing the plaintiff was in a dangerous position, applied the batteries of the motor car and this caused it to jerk so violently that Burton fell off of the car.

The testimony of the plaintiff is corroborated to a considerable extent by the testimony of the witness Hearn. He was not near enough to hear Whitworth tell plaintiff to pull the pin, but he says he saw Burton sitting about two feet distant from Whitworth on the motor car. He also stated that after the power was shut off of the motor car it started again, almost at once, and that he then saw the push car run over the plaintiff. He contradicts the testimony of Sherman by saying that the lat-

ter had his back to the motor car when the accident happened.

Thus it will be seen, according to plaintiff's testimony, that he acted in obedience to a direct command from his foreman, was required to act promptly, and the service required of him was such as to demand his exclusive attention. He had no time for observation or deliberation. Under these circumstances the question of the negligence of the defendant or contributory negligence of the plaintiff were properly jury questions.

Counsel for the defendant also assigns as error the action of the court in giving and refusing certain instructions. We do not deem it necessary to set out these instructions or discuss them in detail. We have carefully read and considered them and are of the opinion that the respective theories of the parties to this law suit were fully and fairly submitted to the jury.

(4) We now come to a consideration of what we deem the most serious question in the case, and this is the alleged excessiveness of the verdict. The jury returned a verdict in plaintiff's favor for $1,500 and it must be conceded that according to the testimony introduced by the defendant that that amount is excessive. We need not set out the evidence on the part of the defendant for the reason that the excessiveness of the verdict must be tested by the evidence on the part of the plaintiff. At the time the plaintiff was injured he was a strong, able-bodied young man twenty-two years of age. When he started to fall from the car he says that he saw that his shoulders or neck were about to fall on the rail and that he threw his hands over on the ties to keep from so falling, knowing that the wheels of the car would sever his head from his body; that he fell on the track between the rails and that a cog wheel of the push car pressed down on his hip and dragged him along ten or fifteen feet down the track; and that he lay there about thirty minutes bleeding at the mouth and nose.

Another witness testified that blood was coming from his ears when he was picked up.

He was carried to a hospital and remained there only a few days but states that he went home because the physicians there did not seem to be treating him properly; that after he went home he was not able to do any work for two months; that he spat up blood for about three weeks and that his lungs hurt him; that he had to hold his head to one side and could not turn it or straighten it up; that he hurt all of the time and could not rest any for five weeks; and that he suffered a great deal of pain. He claimed that he was not able to work much but went to work because he did not have any means of support and felt that he had to do what work he could. At the trial of the case he testified that he still suffered pain from the injury; that he still suffers pain in the small of his back when he lays any object down or picks it up; and that he has at times particularly severe pains between his shoulders.

Giving to plaintiff's own testimony its strongest probative force and considering the character and extent of his injuries and the suffering endured by him, we can not say that the verdict of the jury is excessive.

It follows that the judgment must be affirmed.

### OPINION ON REHEARING.

Hart, J.  The chief contention of counsel for appellant was that the evidence did not warrant the verdict of the jury. In his brief on rehearing he challenges the statement of facts made by the court. In the statement of facts is the following: "When I reached over to pull out the pin the section foreman shoved his battery on; this caused the car to jump or jerk violently and I was thrown down between the push car and the motor car."

It is contended by counsel that there is nothing in the transcript to warrant this statement.

It is not practical in an opinion to set out in full the facts as they appear in the transcript. Such a course would unduly extend the length of every opinion.

Appellee was a witness in his own behalf and being recalled testified as follows:

"Q. You heard the testimony of Mr. Sherman that you stepped off of the car while you were facing the push car; is that a fact?

A. No, sir; it aint. I was sitting on the motor car, upon the seat on the west side of it, on the motor car, right on the corner of the seat, and reached over and pulled this pin out, and when I pulled the pin out he started the batteries on.

Q. Go ahead and tell whether you stepped off the car when you were facing the push car, or not?

A. I was sitting on this seat and reached to pull the pin out, and when I pulled the pin out and he shoved his batteries on I fell right on that side of the track and throwed that hand on the ties to keep from falling against the rail and the car of ties come right on over me.

Q. Who put on the batteries?

A. The section foreman.

Q. What was his name?

A. Whitworth,"

In addition to this, when appellee was carried to the hospital after he was injured Doctor Boyd, his attending physician asked him certain questions in behalf of the railroad company. Among them he asked the following:

"State in your own way and for your own benefit just how this happened," and appellee answered, "I was on the motor car with a push car attached to the motor car with a chain and W. M. Whitworth told me to uncouple the push car from the motor car, which I did. When Whitworth speeded up the motor car and jerked me off the car."

Doctor Boyd wrote this down and it was introduced in evidence as part of the testimony. When this is considered together with the evidence given by appellee on the witness stand, we think the court was fully warranted in abbreviating the testimony into the statement challenged in our statement of facts.

In any event, under the state of the record as set out in this motion for a rehearing, the jury was fully warranted in finding that when the foreman shoved his battery on and the plaintiff was thrown from his seat, the

car jerked violently; or else he would not have been thrown from his seat.

The plaintiff testified that the foreman shut off the battery before he pulled out the pin; that he was sitting on the side on the rear end of the car and reached over to pull out the pin; that the section foreman then shoved his battery on and he was thrown from the car.

We think the jury might infer from the fact that he was thrown from the car that it jerked violently when the foreman threw the battery on.

However, his statement made to the physician was a part of the testimony and in it states that the foreman speeded up the motor car and jerked him off of the car.

The motion for a rehearing will be denied.